## WILLIAM A. BLAIR v. ROBERT A. RUTHERFORD.

R. executed his notes to G., president of the board of commissioners of the Air-Line railroad, due at one and two years.  Before they matured the president of the same company indorsed these notes to C. and W., who indorsed them to B., the plaintiff:  *Held*, that as indorsee and holder of this negotiable paper before maturity, the plaintiff was not charged with any possible defense which R., the maker, might have against the corporation. (Paschal's Dig., Art. 222, Note 285.)

There was a clause in the charter which read as follows: "They (the commissioners) shall receive no subscriptions to said stock unless five per cent. thereof in cash shall be paid to them at the time of subscribing, and should they receive subscriptions to said stock without payment, they shall be personally liable to pay the same to said corporation when organized." The fact that the commissioners did not exact the five per centum from the subscribers affords no defense to a stockholder who gave the note in suit for stock.  The clause was not a condition precedent to the organization of the company, but a mere personal liability or penalty imposed on the commissioners if they should fail to collect the five per centum.  This presupposes the existence of a corporation before the five per cent. is collected.

There was a discretion left to the commissioners as to how the liability of subscribers should be fixed.

The members of the corporation could not complain of its own neglect or wrongful or fraudulent acts.  Where all the facts were in the pleadings as well as in the statement of facts, and the jury found for the defendant because of an erroneous instruction, the court reversed and reformed, and rendered judgment for plaintiff. (Paschal's Dig., Art. 1562, Note 604.)

ERROR from Travis.    The case was tried before Hon. JOHN IRELAND, one of the district judges.

On the 30th January, 1860, the legislature incorporated the "Air-Line Railroad Company," for constructing a railroad from Brenham to Austin, Texas.    The act provided for a board of commissioners to procure stock subscriptions. These commissioners elected George W. Glasscock their president.    The defendant, Rutherford, became one of the subscribers for stock, and in payment therefor he executed his several notes of the tenor set out in the opinion.    The railroad company having been organized, the railroad transferred these notes, payable to Glasscock, to Catterton & Williams, who indorsed them to the plaintiff, Blair.

xxxi—30

Catterton & Williams were contractors employed by the Air-Line railroad to grade five miles of the road. The work was proceeding, when the experiment of secession was tried; war followed. The time for all operations by railroad companies was extended. (Paschal's Dig., Arts. 4960–4968.) After the close of the war the charter of this company was extended. Rutherford refused to pay his notes, and in his defense treated the holder of them as he would the original payees, and seemed to hold him liable for all the failures to build the Air-Line railroad.

All the pleadings of the parties seemed to be founded upon the notion that it was necessary for the plaintiff to prove good faith and compliance on the part of the Air-Line Railroad Company.

After a great number of amended petitions the case was dismissed on exceptions. The plaintiff prosecuted error.

*Hancock & West* and *Chandler & Turner*, for the plaintiff in error.—The exceptions really were: I. That the law creating the charter of the Air-Line Railroad Company required that $300,000 stock should be subscribed and five per cent. paid in before they could organize the company; that, inasmuch as the five per cent. was not all paid in before the organization, the organization was void, and every act of the president and directors and other officers was void; consequently the object for which the notes sued on were given had failed, and the notes were void for want of consideration.

II. That the notes sued on were made payable to George W. Glasscock, president of the board of commissioners of the Air-Line Railroad Company, when there was no company or corporation when the notes were executed, because the company had not been organized, and that Glasscock was a commissioner of the state, and not of a corporation, which then had no existence. (President, managers, and company of the Centre and Kishacoquillas Turnpike Road Company v. McConaby, 16 S. & R., 140; Vermont Central

Railroad Company v. George Clayes, 21 Vt., 30; Duke v. The Cahawba Navigation Company, 16 Ala., 374; Redfield on Railways, p. 10, sec. 9; Thomas Jenkins v. Union Turnpike Company, 1 Caines' Cases in Error, 86; 21 Vt., 35; Clark v. Magnolia Navigation Company, 10 Watts, 364; Moran, *et al*, v. The Commissioners of Miami County, 2 Black, 722; 16 N. Y., 129; 14 Johnson, 244; Willmarth v. Crawford, 10 Wend., 344; Watson v. A. Flanagan, 14 Tex., 354; Hopkins v. Upshur, 20 Tex., 89; City of San Antonio v. Jones, decided by this court at the fall term, 1866, [28 Tex., 478;] Chester Glass Company v. Dewey, 16 Mass., 94; Vermont Central Railroad v. Clayes, 21 Vt., 35; 20 Ill., 654; 10 Ohio, 114; Angel & Ames on Corp., sec. 94; 4 Denio, 396.

*T. D. Moseley*, for the defendant in error.

CALDWELL, J.—This suit was commenced by the plaintiff in error in the district court of Travis county upon two promissory notes, in all respects similar except as to time of payment.

They read as follows:

"$190.                         AUSTIN, *May* 12, 1860.

"On the first day of June, A. D. 1861, I promise to pay to the order of George W. Glasscock, president of the board of commissioners of the Air-Line Railroad Company, $190, with interest from the 1st day of June next, for value received, payable at the office of said company.

                              "R. A. RUTHERFORD."

Each of said notes is thus indorsed:

"MARCH 16, 1861. Pay to the order of Catterton & Williams, without recourse of any kind.

"The Air-Line Railroad Company.

                         "By J. B. BANKS, *President.*"

"Pay to W. A. Blair.

                              "CATTERTON & WILLIAMS.

"Without recourse.              G. W. GLASSCOCK,

            "*Pres't Board Com. Air-Line R. R. Com.*"

The pleadings are voluminous, and counsel seem to have explored every source from which information could be drawn touching suits by and against corporations; but with our view of the law, under favor we would say it, their labors have not been of a character to instruct, but rather to confuse and perplex the mind.

A brief statement of the facts is necessary as the grounds of our conclusion.

The plaintiff in error sets up at length the charter of the Air-Line Railroad Company and all the preliminary steps in the organization of the company; also the title of the plaintiff to the notes sued on. It is alleged and not denied that said notes were transferred before due to Catterton & Williams, for work and labor done on the Air-Line railroad, at the instance of said company, and by Catterton & Williams to plaintiff below, before maturity and for a valuable consideration.

The plaintiff's right to recover was resisted, on the ground that there was no such corporation as the Air-Line Railroad Company. This objection was amplified into thirteen exceptions, all of which were overruled except the eleventh, and, for aught we can see, it ought to have fallen with the others.

The statement of facts contains the two notes sued on, the act and suplemental acts of incorporation, and the testimony of J. B. Banks, who was chosen president of said road, by which it is shown that the commissioners named in the act, who were authorized to receive subscriptions to the capital stock of said company, chose G. W. Glasscock president of the board of commissioners; that said commissioners, by virtue of the authority vested in them by the act of incorporation, received subscriptions to the capital stock for the full amount required for the organization of the company; that the commissioners received the promissory notes of the subscribers to the extent of their subscriptions; the notes in suit being of that class; and, finally,

that a president and directors were chosen, and the company organized and commenced business. Messrs Catterton & Williams undertook a section of the road, and agreed to receive in payment for their labor the stock-notes of the company, and about the beginning of the late war the company suspended the work on said contract with the assent of Catterton & Williams, and fully paid off their obligations to them in the stock-notes of the company, according to agreement.

These are the material facts. Counsel for defendant below insist with great earnestness that the company never organized, and therefore was incapable of contracting or exercising any of the powers conferred by the charter, and cites us to the following paragraph from the 1st section of the act of incorporation:

"They (the commissioners) shall receive no subscriptions to said stock unless five per cent. thereof in cash shall be paid to them at the time of subscribing; and, should they receive subscriptions to said stock without payment, they shall be personally liable to pay the same to said corporation when organized."

We are of opinion that this permission of the act of incorporation is not a condition precedent to the organization of the company, but a mere personal liability or penalty imposed on the commissioners if they should fail to collect the five per cent.

This is evident from the plain import of the concluding words of the paragraph.

Upon the neglect of the commissioners to collect the five per cent., who is it and who only has the right to recover the penalty? "The corporation, when organized." This is conclusive. It presupposes an organization of the company without the previous payment of the five per cent., because the corporation, after its complete organization, must collect it.

The legislature authorized the commissioners to receive

subscriptions to the capital stock of the company, but the manner in which the liability of the subscribers should be fixed, and their evidence of ownership of the number of shares subscribed for, is not directed, confined, or controlled by the act of incorporation, but is left to the discretion of the commissioners.

Whether the points raised by counsel for defendant could be successfully maintained in a suit brought by the corporation is a question we are not required to determine, but in a suit of such a character the argument and authorities relied on by counsel for defendant would be pertinent to the issue.

It is sufficient for the purposes of this decision that the body, whether real or fictitious, of which the defendant (by his signature to the note in suit) admits himself to be a member, cannot be heard to complain of its own negligent, wrongful, or fraudulent acts. So also of each individual member of the corporation.

But the plaintiff's right to recover does not depend upon these considerations. The defendant executed the notes sued on, and threw them on the market. They are negotiable paper, and passed into plaintiff's hands before maturity for a valuable consideration. There is nothing on their faces that militates against their validity. There is nothing in the statement of facts to take them out of the operation of the general laws governing this class of paper.

It follows, therefore, that the judgment of the court below, sitting as a jury, in finding for the defendant, must be reversed, and as there is no question of fact to be submitted to the jury, we will now proceed to render such judgment as ought to have been rendered in the court below.

It is therefore considered by the court that the judgment of the district court of Travis county be reversed, and that plaintiff have and recover of and from the defendant the amount of the notes sued on and interest according to their tenor and effect.

DECREED ACCORDINGLY.