McDermott v. Donegan.

---

THOMAS M. McDERMOTT, Appellant, v. JOHN J. DONEGAN, Respondent.

44   85
32a  328
44   85
45a  512
44   85
51a  44
44   85
59a  35

1. *Garnishment — Indebtedness — Defense.* — The plaintiff, in a garnishment based upon an alleged indebtedness, proposes only to succeed to the rights of the garnishee's alleged creditor as to the indebtedness; and whatever would defeat the creditor in a suit in his favor to recover the alleged debt will also be fatal to a recovery in such garnishment.
2. *Cairo and Johnsonville Packet Company — Stockholders, liability of for unpaid subscriptions — Conditions of charter — Construction.* — The charter of the Cairo and Johnsonville Packet Company provided that before the company should proceed to the transaction of the business intended to be prosecuted, the sum of $350,000 must have been paid in as well as subscribed. The business to be done was the construction of wharf-boats, steamers, etc., and the carrying on of a freight and transportation business. The grantees named in the charter were to constitute a board of commissioners "to open books for subscription to the capital stock of the company for such an amount as in

their judgment the business of the company should require, but for no amount of subscription less than $350,000." The charter further provides that within twenty days from the closing of the subscription the officers should be elected, and provides the manner of their election, their number, and term of office, and that the corporate powers of the company shall be vested in such officers. *Held,* that the company was warranted in organizing and attaining a corporate existence on the basis of a *bona fide* stock subscription of $350,000. The provision that the company should not proceed with the contemplated transportation business until the $350,000 had actually been paid in was for the benefit of those who might deal with the company—not for the benefit of stockholders, as a preliminary condition to the right to enforce collections of calls duly made upon the stock subscribed.

3. *Practice, Civil — Trials — Instructions.*— General and abstract instructions may mislead the jury, and should not be given.

## *Appeal from St. Louis Circuit Court.*

On the trial the court gave the following, with other instructions :

" 1. The amount of capital stock of a corporation fixed by the charter to be subscribed and paid in before the company is authorized to organize and proceed to business under such charter, is an essential condition to the enforcement of subscriptions to such stock ; and unless the jury believe from the evidence that the amount of three hundred and fifty thousand dollars had been subscribed and paid in before the St. Louis, Cairo and Johnsonville Packet Company proceeded to act under their charter, the plaintiff can not recover, and the jury will find for garnishee.

" 2. In order to acquire such existence as will enable a corporation to enforce its subscriptions, the charter of such corporation must be accepted, and conditions precedent must be complied with according to the terms of such charter ; and unless the jury believe from the evidence that the St. Louis, Cairo and Johnsonville Packet Company had acquired such existence, the plaintiff can not recover, and the jury will find for the garnishee."

The other facts sufficiently appear in the opinion of the court.

*Bakewell & Farish*, for appellant.

I. The instructions were clearly erroneous. The second instruction was calculated to mislead the jury, and submitted to them purely a matter of law. The first instruction was erroneous,

because the act of incorporation read in evidence was sufficient to impart a legal existence to the St. Louis, Cairo and Johnsonville Packet Company, for the purpose of enforcing subscriptions to its stock, and because the garnishee was, by his subscription, estopped to deny that the said St. Louis, Cairo and Johnsonville Packet Company was a body corporate. (Ang. & A. Corp. §§ 636, 518; Dutchess Manufacturing Co. v. Davis, 14 Johns. 238; Sagory v. Dubois, 3 Sandf. Ch. 491; Vermont Central R.R. v. Clayes, 21 Verm. 34.)

II. The act of incorporation may not be sufficient to give vitality to acts purporting to be done by the corporation, when it appears that the company has organized contrary to the requirements of its charter, and proceeded to business before a requisite amount of its stock was paid in; but this refers to matters of business outside and independent of subscriptions and the enforcement or collection thereof. The act of incorporation was read in evidence, from which it appeared that the parties therein named, and such others as might be associated with them, were created a body corporate, with power to sue, liability to be sued, and clothed with the right to sue and the power to enforce collection of subscriptions to its stock, independent of any organization. Such would seem to be the aim and scope of the charter, as otherwise the collection of subscriptions to the amount of three hundred and fifty thousand dollars could never be enforced, and the organization would fail. These subscriptions are mutual; there is a mutual obligation existing between all the subscribers. Their promise is to pay the amount of their subscription, and it is absolute and anterior to, and independent of, the organization or proceeding to business. The matter of proceeding to business has reference solely to the outside world, and can never be interpreted to mean payment of, or obligation to pay, subscriptions. The reservation in the charter was a matter between the State and the corporators. If it was infringed, the State, by proper proceeding, might have revoked the grant or enjoined its operation. It was intended as a protection to the outside world or community at large, and can never, in its letter or spirit, be construed to apply as a shield to delinquent subscribers to stock, to enable

them to break their engagements, and screen them from the force and obligation of their promises. Their engagement is absolute. They subscribe and promise to pay their subscription, and they are estopped to say the corporation was a fraud, or that their engagement was to pay only when the company was organized and proceeded to business.

*Slayback & Spencer*, for respondent.

I. There was no error in the court below. The instructions given by the court fully covered the law applicable to the case, and were as fair for one party as the other. "As the attaching creditor can hold the garnishee only to the extent of the defendant's claim against the garnishee, and can acquire no rights against the latter except such as the defendant had, and as he is not permitted to place the garnishee in any worse condition than he would occupy if sued by the defendant, it follows, necessarily, that whatever defense the garnishee could urge against an action by the defendant for the debt in respect of which he is garnished, he may set up in bar of a judgment against him as garnishee." (Drake on Attach. § 672; Shelton v. Simonds, Wright's Rep. 724.)

II. So far as the company was concerned, Donegan, the respondent, had a good defense, which he had a perfect right to set up against the appellant, to-wit: that the company had not complied with the conditions precedent named in their charter as essential to a recovery by them of enforced subscriptions to their stock. (Redf. on Rail. § 51, notes; Ang. & A. Corp. § 291.) The appellant stands in no sense in a more favorable position toward the garnishee than the defendant would have stood had the defendant commenced suit. (Camp v. Byrne, 41 Mo. 534.)

CURRIER, Judge, delivered the opinion of the court.

Donegan is sought to be charged as garnishee of the St. Louis, Cairo and Johnsonville Packet Company, on the ground of an alleged indebtedness for an unpaid balance claimed to be due on his subscription to the capital stock of that company. He subscribed $2,000 of the stock, and paid $1,000, leaving a balance

of $1,000 unpaid. The balance, the plaintiff, a creditor of the company, seeks to reach by this garnishment proceeding; but Donegan avers, as a reason why he should not be held to pay this balance, that his subscription for the stock was obtained fraudulently, by means of false statements and representations respecting the organization, standing, and condition of the company, at the time the subscription was made, and respecting also its business and financial situation and prospects. He avers that the company never had any legal organization; that $350,000 in stock was never subscribed and paid in, nor subscribed at all in *bona fide* subscriptions, as the charter required as a condition precedent to its right to make and collect calls upon such stock as had in fact been subscribed. Issues were joined upon these allegations, and the evidence given upon them at the trial was conflicting. At the solicitation of the defendant (garnishee), the court instructed the jury: first, that in order to a recovery by the plaintiff, the jury must be satisfied from the evidence that $350,000 of the capital stock of the company had been subscribed and paid in. The court also, at the request of the defendant, gave a second instruction, apparently intended to embrace the same legal principle incorporated in the first, but expressed in general and abstract terms. The plaintiff complains that these instructions are erroneous, containing false propositions of law, and that they are otherwise misleading and prejudicial to him.

The plaintiff seeks to recover a debt alleged to be due from the garnishee to the packet company. He proposes to succeed to the rights of that company; and whatever would defeat the company in a suit in its favor to recover the alleged balance will also be fatal to a recovery in this proceeding. (Drake on Attach. § 672.) This proposition is not contested, but it is objected that the court, by its first instruction, given at the request of the garnishee, interposed an obstacle in the way of a recovery, which would not exist if the suit were directly in favor of the packet company, to-wit: that $350,000 must have actually been paid in, as well as subscribed, in order to warrant a verdict for the plaintiff.

This objection is well taken. The instruction would seem to

have been given on an inspection of the second section of the act incorporating the packet company, without comparing it with the residue of the act. This section provides that before the company shall proceed to the transaction of the business intended to be prosecuted, the sum of $350,000 must first be paid in, as well as subscribed. The business to be done was the construction of wharf-boats, steamers, etc., and the carrying on of a general freight and transportation business, as provided in the next succeeding section of the act. It is, however, provided in the fifth section that the grantees named in the charter shall constitute a board of commissioners " to open books for subscription to the capital stock of said company, * * * and for such amounts as in their judgment the business of the company may require, but for no less amount of subscription than $350,000." The section then provides that, "within twenty days from the closing of the subscription called for by the commissioners, an election for directors shall be held, under the inspection of said commissioners." The mode of election and the number and term of office of the directors is then defined. Section 4 provides that the corporate powers of the company shall be vested in these directors, and authorizes them to elect a president, etc. These sections clearly show that the company was warranted in organizing and attaining to a corporate existence on the basis of a *bona fide* stock subscription of $350,000. The assessment of this stock and the collection of calls upon it were matters properly enough left to be attended to after the formal organization under the supervision of the commissioners, but the directors were not authorized to proceed with the contemplated transportation business until $350,000 had actually been paid in. This was for the protection and security of those who might deal with the company, not for the benefit of the stockholders as such — at least not for their benefit in the sense of a preliminary condition to the right to enforce collections of calls duly made upon the stock subscribed. The court was therefore wrong in directing the jury, in effect, that the paying in of the $350,000 was a condition precedent to the right to coerce payment of calls duly made upon the stock. For that reason the judgment of the court below must be reversed.

Had the words "paid in," contained in the instruction, been omitted, it would have announced a correct legal proposition; for the directors were not warranted by the charter in proceeding to make calls and enforcing collections until the full sum of $350,000 in *bona fide* solvent subscriptions was actually secured. Each stockholder or subscriber had a right to insist that this basis of strength should be established before paying anything. This was for the protection of the stockholders, to secure them against the consequences of initiating the corporation without the strength and subscription resources required by the organic law of its existence. (Redf. on Rail. § 51, par. 3, and the numerous cases there cited.) The second instruction is also indefensible. It is general and abstract, and ought not to have been given. It may have done no harm, but it was not calculated to do any good, and may have misled the jury.

The result is that the judgment of the Circuit Court is reversed and the cause remanded. The other judges concur.