# WHEELING.

PITTSBURGH, WHEELING & KENTUCKY R. R. Co. *v.* APPLE-
GATE & SON.

Submitted June 3, 1880—Decided December 9, 1882.

(\*SNYDER, JUDGE, Absent.)

1. Upon a motion for a change of venue counter affidavits may be read; and if the court is satisfied from all the affivadits or other evidence for and against the motion, that the venue ought to be changed, it will in the exercise of its discretion remove the case, otherwise it will not. The exercise of this discretion is of course reviewable by the Appellate Court. (p. 179.)

2. Where the name of an individual appears upon the stock-book of a corporation as a stockholder, the presumption is, that he is owner of the stock, appearing in his name; and such book is proper evidence to go to the jury to show, that he was a subscriber to the capital-stock of the corporation. (p. 180.)

3. A subscriber to the stock of a corporation can not escape his liability to pay his subscription, on the ground that he did not pay the sum required to be paid by the statute at the time he subscribed. (p. 183.)

---
*Cause submitted before Judge S. took his seat on the bench.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Brooke, rendered on the 20th day of March, 1879, in an action at law in said court then pending, wherein the Pittsburg, Wheeling and Kentucky Railroad Company was plaintiff, and Applegate & Son were defendants, allowed upon petition of said plaintiff.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*W. P. Hubbard* for plaintiff in error cited the following authorities: Code ch. 128, sec. 1; 7 Ind. 110; 10 Ind. 182; 4 Cold. 214; 8 Leigh 364, 366; Hall's Dig. 622; 2 W. Va. 59; *Id.* 73; 3 Bla. Cs. Com. 383; 5 Otto 418; 26 Me. 191; 9 R. I. 513; Code Va. (1860) ch. 57, sec. 25; *Id.* sec. 6; 29 Conn. 148, 149; 24 Vt. 474, 475; 19 N. Y. 119; 26 Barb. 202; Thomp. Stockholders § § 162–170; 60 Me. 468; 5 Giel. 484; 36 Miss. 17; 6 Man. & G. (46 E. C. L.) 81, 133; Thomp. Stockholders § 107, note and cases there cited; 17 Ga. 574; 31 Tex. 465.

*John J. Jacob* for defendants in error cited the following authorities: 11 W. Va. 727; 1 Greenl. Ev. § 485; Code Va. (1860) ch. 57, § 25; 1 Caine's Cas. 86; 11 Johns. 98; 8 Serg. & R. 219; 13 Serg. & R. 256; 14 Serg. & R. 434; 12 Ired. 224; 8 Rich. 145; 21 Vt. 30; 16 Md. 422; 8 Conn. 483; 21 Wend. 211; 12 Ga. 170; 24 Md. 563.

JOHNSON, PRESIDENT, announced the opinion of the Court:

In 1873, the plaintiff brought its action of trespass on the case in *assumpsit*, in the circuit court of Brooke county, against the defendants. In the declaration filed is set out the incorporation of the company and the act of the Legislature of West Virginia incorporating the "Pan-Handle Railroad Company," as well as the act giving to the plaintiff all the rights of the said Pan-Handle Railroad Company, and alleging, that the defendants had subscribed for ten shares of the capital stock of the said Pan-Handle Railroad Company of the

par value of ten dollars per share and, that they paid thereon one dollar per share or ten dollars; that said Pan-Handle Railroad Company had at divers times demanded the payment of the residue of said subscription, which the defendants neglected and refused to pay; that the plaintiff, which had succeeded to all the rights and was subject to all the obligations of said Pan-Handle Railroad Company, had repeatdly after it had proceeded with the construction of said railroad, demanded of said defendants the payment of the balance of said subscription, which they had neglected and refused to pay to the plaintiff to the damage of plaintiff one thousand dollars, &c.

The defendants appeared and demurred to the declaration, which demurrer was overruled; and they then pleaded *non assumpsit.* The plaintiff, at the March term of said court, 1879, filed some nine affidavits as the foundation for a motion for a change of venue. The ground stated in the affidavits is, that predjudice existed against the plaintiff as to the subject of the suit in Brooke county, to such an extent, that it was impossible for it to have in that county a fair and impartial trial. The motion for a change of venue was resisted by the defendants, and they filed some twelve counter affidavits tending strongly to show, that there was no such general predjudice in said county against plaintiff as to the demand in said action and, that it could have a fair and impartial trial of the issue in said county.

On the 11th day of March, 1879, the court after considering said motion and the affidavits in support thereof together with the counter affidavits, overruled the motion for a change of venue, to which the plaintiff excepted.

On the 20th day of March, 1879, the issue was tried by a jury and a verdict rendered for the defendants. The plaintiff moved the court to set aside the verdict and grant it a new trial, which motion the court overruled, and entered judgment for defendants for their costs. In a bill of exceptions filed, all the evidence is certified. To the said judgment the plaintiff obtained a writ of error. The evidence as certified sets out the act of the Legislature of West Virginia incorporating the Pan-Handle Railroad Company, and the several acts amendatory thereto, the last of which is an act passed

February 16, 1871, which changed the name of the corporation to "The Pittsburgh, Wheeling and Kentucky Railroad Company," and among other things provided, "that all contracts and liabilities to or from said Pan-Handle Railroad Company shall be transferred to and rest in the said Pittsburgh, Wheeling and Kentucky Railroad Company, which shall succeed to all the rights and be responsible for all the obligations of the Pan-Handle Railroad Company." It further provided, that all suits then pending on behalf of the Pan-Handle Railroad Company, might be prosecuted without delay, by inserting the name of the new corporation in place of the old, and the case should be tried and decided as though no change had been made.

The plaintiff introduced in evidence the minute book of the plaintiff and read therefrom the proceedings of a stockholders' meeting held at Wellsburg, March 29, 1869, by which it appeared, that pursuant to a notice inserted for four successive weeks in the newspapers published in said county of Brooke, the meeting was held in the court house of Brooke county. They proceeded to elect a president and board of directors, &c. On the same day it appeared in evidence, that the board of directors had a meeting and A. Kuhn, was authorized to collect one dollar per share upon the capital stock subscribed. It also appeared from the proceedings of the board of directors at a meeting held on the 13th day of December, 1870, that a committee was appointed to collect the assessment of ten dollars per share, remaining unpaid, and an additional assessment of ten dollars per share was made. It appeared from the evidence of H. G. Lazear, that he was an original subscriber to the capital stock of the company; that he was present at the organization of the company in the court house of Brooke county, on the 29th of March, 1869; that the stockholders were generally present; but could not say whether the defendants were there, supposed they were, but could not say positively; was present at the meeting on December 13, 1870, when it was decided to collect the first call, so far as it was unpaid, and to proceed and collect the full sum of one dollar per share; was appointed agent to make collections, and as such agent collected one dollar per share from the defendants. This was

shortly after he was appointed agent. He told the defendants what his business was, and they paid him one dollar per share amounting to ten dollars. At that time the company were making preparations to open the road. He called on none except stockholders. They were mentioned to him as being stockholders, and they did not deny it; was present at a meeting in Wellsburg, in the court house, after the organization of the Pittsburgh, Wheeling and Kentucky Railroad Company, when the affairs of the company were under discussion; it was a kind of indignation meeting. Joseph Applegate was present and took an active part. The object of the meeting was to denounce the course pursued by the officers of the company. "Those in the meeting were rather going for the president, Mr. Lewis Applegate." He thinks this was in 1874, "some time after the road was broken down."

Joseph H. Pendleton testified, that some time subsequent to or about the time of the organization of the company, the original subscription papers in some way disappeared, and the company and the counsel for the company, have sought to find them but have not been able to do so. But they had a memoranda of the amounts taken on the books of the company. "The papers I say were but the original subscription lists, and I have seen them, and I have seen a subscription list with the name of Applegate & Son on. I can't say whether the names on these lists were copied on to other papers. I saw a book at the trial of Samuel George, with a list in it; never said I saw a list; I said I saw the subscription papers; I can say, that the paper on which I saw the name of Applegate & Son, was the original subscription paper, and the name of W. C. Barclay was on it for the same amount. I don't know, that Applegate & Son's name was on original subscription as I don't know his signature. I don't know anything about copied papers; never heard about copied papers until the other trial in court. I speak from original signatures." He further said, that "On the morning of the stockholders' meeting to organize, I assisted Mr. Kuhn to make out a list of subscribers, from which this little book was copied, and then the whole subscription list was copied. * * * Couldn't say whether they were written down just as they were called off or arranged alphabetically.

I called some of them from the original subscription papers. There might have been a part written in that book before I began." Mr. Lewis Applegate testified: "I wasn't president then, but the subscription papers were left here by the direction of the secretary, and whatever became of them I never could know. I found the subscriptions all entered on a little book, when I came in; the names and amounts. I searched for the subscription papers. There was a search made in all the papers of the railroad company, but they couldn't be found. There have been a good many enquiries after the papers. Nobody could tell where they went after the road got into operation."

Mr. J. H. Pendleton being recalled, testified: "The time I saw the papers in the possession of Mr. Kuhn, was on the morning of the meeting for organization. The last time I remember seeing them in his possession, was when the list was made out in a little book. I can't say I didn't see them afterwards, but I have no recollection of so doing." After other testimony was introduced, J. H. Pendleton was again recalled and was handed a book and asked what it was? He replied: "This is a book that I received from Mr. Lewis Applegate, the president of the company, purporting to contain a list of the stockholders of the P. W. & Ky. R. R. Co. It is a list of the stockholders, with the amounts of stock. It belongs to the company." Plaintiff thereupon offered the book in evidence, to which the defendants objected and the court sustained the objection and refused to admit the book in evidence, to which action of the court the plaintiff excepted.

C. D. Hubbard testified, that he was then president of the company and had been a director since 1872. Did not know positively at what time a regular set of books were opened by the company, except from the books themselves. Did not keep the books. Book shown witness he said was the ledger of the company; it contains the stock accounts of the stockholders, "or what he claimed to be such." "There is no other book, to my knowledge, containing such account. The first entry in the book is dated May 31, 1872. Curran Mendel was then secretary. Jas. Campbell succeeded him July 18, 1872. This book has been by the corporation regarded

and acted on as the ledger of the company. It is in the handwriting of James Campbell." Thereupon plaintiff offered the said ledger in evidence, to which the defendants objected and the court sustained the objection and refused to allow the said book to go in evidence, whereupon the plaintiff again excepted.

Plaintiff then offered the account of the said Applegate & Son, as stockholders in the plaintiff's company, as such account appeared in such ledger, to the admission of which the defendants objected, and the court sustained the objection and refused to permit the said account to go in evidence, and the plaintiff again excepted.

The plaintiff then proved, that a notice had been duly published, that at a certain time books for receiving subscription to the capital stock of the Pan-Handle Railroad Company had been opened, and that afterwards, at a meeting of the stockholders held as aforesaid on the 29th day of March, 1869, a majority of the commissioners stated, that twenty thousand dollars or more of stock had been subscribed, and submitted a list of the persons, who had subscribed stock, which was publicly read. It appears by the charter of the Pan-Handle Railroad Company that they could not organize until at least twenty thousand dollars had been subscribed. To the introduction of which evidence, the defendants objected, and the court sustained the objection and refused to permit the same to go to the jury; and the plaintiff again excepted. After the evidence had all been introduced by the plaintiff, the defendants moved to exclude the plaintiff's evidence on the following grounds : First, that there was no such public notice of the opening of the subscription books as is required by the statute. Second, that there is no proof that the ten dollars per share required by the statute to be paid at the time of the subscription, was in fact paid, but on the contrary there is proof in the record that it was not paid. Third, there is no proof that the twenty thousand dollars of capital stock, as required by the second section of the Act of July 15, 1868, was subscribed before the company was organized. Fourth, that there was no proof of the incorporation of the company. And the court sustained the motion and excluded the evidence, and the plaintiff again excepted.

The first error assigned is, that the court refused to change the venue, and counsel for plaintiff in error insists, that upon the motion to change the venue, counter affidavits were not admissible. That if the plaintiff by its own affidavits showed ground for such change, it was the duty of the court to order the change without reading affidavits in opposition to the motion.

Sec. 1 of chap. 128 of the Code provides, that "on motion of any party to a suit in a circuit court, the said court may for *good cause shown* order it to be removed to any other circuit court." There must then exist good cause for such removal, and such cause must be shown to the satisfaction of the court. The court exercises a discretion in this, as it does on the motion for a continuance of the cause. If good cause is not shown, then the court will not remove the case. And in ascertaining whether, there was such good cause, it seems to us, that it would be strange indeed if the other side were not allowed to show, that no such cause existed. The party making the motion might file his own affidavit, and in it show the best of reasons why the venue should be changed, and according to the position here assumed by counsel for plaintiff in error the court could not read in opposition to the motion affidavit that would clearly show, that there was absolutely no such reason as appeared in the affidavit; and the court would be bound to remove the cause at the mere caprice of one of the parties to the great inconvenience and expense of the other. Counter affidavits may be filed, and where the court has read all the affidavits *pro* and *con*, if it is satisfied that good cause for such removal has been shown, it ought to order a removal of the case; but not otherwise.

Upon a motion for a continuance this Court has held, that affidavits in opposition thereto may be read. *State* v. *Betsall* 11 W. Va. 727. But it is also insisted, that if all the affidavits filed in this case for and against the motion were read, the motion ought to have prevailed. We have read all the affidavits, and we do not think good grounds were shown for a change of venue in this case. The court properly overruled the motion. The next error assigned is, the refusal to admit in evidence the book produced by the witness, Pendleton, purporting to contain a list of the stockholders of

the corporation. It was proved, that this was one of the books of the company, as it was also proved, that the ledger was one of the books of the company but, that the first entry was made in the ledger on the 31st day of May, 1872, more than three years after the oganization of the company.

Section 25 of chapter 57 of the Code of 1860, which is referred to by and made a part of the charter of the company, provides, that "A person in whose name shares of stock stand on the books of the company, shall be deemed the owner thereof as it regards the company." And section 26 of the same chapter provides, that "The president and directors shall issue to each person appearing on the books of the company as owner of any shares of stock fully paid on, a certificate for such shares under the seal of the company, signed by the president, and countersigned by the secretary or cashier."

In *Turnbull* v. *Payson*, 5 Otto 421 it was held, that "where the name of an individual appears on the stock book of a corporation as a stockholder, the *prima facie* presumption is, that he is the owner of the stock in a case where there is nothing to refute that presumption; and in an action against him as a stockholder the burden of proving that he is not a stockholder or of rebutting that presumption, is cast upon the defendant. A number of authorities are cited by Mr. Justice Clifford to sustain this position. The book and ledger should have been permitted to go in evidence as tending to show, that the defendants had subscribed for stock and that they were stockholders. The presumption that would be thus raised, of course might be rebutted by them, if in their power to do so. As to the refusal of the court to admit the declaration of the commissioners at the meeting called for the organization of the company, that a majority of them stated that the necessary twenty thousand dollars of stock had been subscribed, the court did not err in excluding it, because in an action of this kind the evidence was wholly irrelevant. Such evidence, as well as any evidence tending to show, that the company was not legally organized, would be both relevant and material, in a *quo warranto* proceeding to annul the charter; but such evidence is neither relevant nor material in an action by the company against a subscriber of stock to

require him to pay such subscription.    5 Litt. 45; 9 B. Monroe 71; *Wight* v. *Shelby Railroad Co.*, 16 B. Mon. 7.

Did the court err in excluding the evidence from the jury? This involes the question whether or not the jury, on the evidence before them, would have been warranted in finding for the plaintiff? The grounds for excluding the evidence were first, that there was no such public notice of the opening of subscription books as is required by the statute. Second, That there was no proof that twenty thousand dollars of the capital stock was subscribed. There is nothing in either of these grounds, upon which a stockholder in a contest as to whether he should pay his subscription or not, could rely. These are grounds that affect the public, and the public only, in a proper proceeding, could urge them. Third, That there was no proof of the incorporation. It is strange that this point should have been made in the face of the charter, which is in the bill of exceptions. Fourth, That there is no proof, that the two dollars per share required to be paid at the time of the subscription was paid; but the record affirmatively shows, that it was not paid.

It is insisted, that where the statute requires a part of the subscription to be paid down at the time, and this is not done, the corporation cannot recover the amount of such subscription from the person so subscribing, and a number of authorities are cited, which fully sustain the position. *Union Turnp. Co.* v. *Jenkins*, 1 Caine's Cas. 381; *Highland T. Co.* v. *McKean*, 11 Johns. 98; *Hibernia T. Co.* v. *Henderson*, 8 S. & R. 219; *Ogle* v. *Sommerset T. Co.*, 13 S. & R. 256; *Leighty* v. *Susquehanna Co.*, 14 S. & R. 434; *McRea* v. *Russell*, 12 Ired. 224; *Greenville R. Co.* v. *Woodsides*, 5 Rich. 145; *Vermont C. R. R.* v. *Clayes*, 21 Vt. 30; *Maltby* v. *N. W. Va. R. R.*, 16 Md. 422; *Starr* v. *Scott*, 8 Conn. 483; *Crocker* v. *Craine*, 21 Wend. 211; *Napier* v. *Poe*, 12 Ga. 170; *Taggart* v. *Western R. R. Co.*, 24 Md. 563.

The theory upon which it is held, that the company cannot recover from the subscribers in such cases is, that the cash payment not having been made, the subscription is void; that it is a *nudum pactum*; that there is no mutuality, because it is claimed, that the company would not be bound to deliver the certificate of stock on a subsequent tender of

the money. But the cases in our opinion have no solid foundation on which to rest. It is for the benefit of the public, that the statute requires the cash-payment to be made; it is required to insure good faith and to avoid shams in those enterprises that so vitally affect the public. But, as between the corporation and the subscribers to the stock, the contract is made at the time of the subscription, and this is a sufficient consideration to support the contract. As is well said by Mr. Thompson, in his work on "Liability of Stockholders" section 107: "A subscription will operate just as effectively to deceive the public into subscribing for other shares or giving credit to the corporation, whether the statutory earnest-money is paid or not. * * * And it seems now firmly settled, that a person cannot discharge himself of the responsibilities of a stockholder, by showing that he never paid the deposit or first installment required of every subscriber. By the articles of association, the deed of settlement or the general law, a person will not be thus permitted to take advantage of his own default, to the prejudice of others." This position is well sustained by authority; and it will be seen, that the New York courts have changed their rulings on this subject. *Chesley* v. *Pierce*, 32 N. H. 402; *Piscataqua Ferry Co.* v. *Jones*, 39 N. H. 491; *Beach* v. *Smith*, 28 Barb. 254; *Black River, &c.*, v. *Clarke*, 25 N. Y. 208; *Haywood Plank Road Co.* v. *Bryan*, 6 Jones L. 82; *Hall* v. *Selma, &c.*, 6 Ala. 741; *Smith* v. *Plank Road Co.*, 30 Ala. 650; *Thorp* v. *Woodhull*, 1 Sandf. Ch. 411; *Wight* v. *Shelby R. Co.*, 16 B. Mon. 4; *Mitchell* v. *The Rome Railroad*, 17 Ga. 574; *Blair* v. *Rutherford*, 31 Texas 465.

It seems to me to hold, that the stockholder is exempt from liability because he received indulgence from the corporation, is to permit him to take advantage of his own wrong. He has, by his subscription, induced others to take stock and then, when the road is built and in operation and he thinks it is not a good investment, he will take the advantage of the road, which others built and which he encouraged them to build by subscribing to the enterprise himself, and escaped all obligations by pleading his own default. This would permit him to do the very thing as an individual, that the law requiring the cash payment to be made at the time

of the subscription which was enacted for the public good, was designed to prevent. Both reason and the better authorities, are in favor of the rule we here adopt; that a subscriber to stock of a corporation, cannot escape his liability to pay his subscription on the ground, that he did not pay the required sum at the time he subscribed.

It was shown, by the evidence, and it is uncontradicted, that these defendants upon being approached for a payment on their stock, for which it was alleged they had subscribed, paid without question thereon the amount at that time called, to-wit ten dollars or one dollar per share. With this evidence, if the jury had been permitted to pass upon it, and had found for the plaintiff the whole unpaid balance of the alleged subscription, on well established principles, we certainly would not have disturbed the verdict. The court erred in excluding the evidence.

The judgment of the circuit court is reversed with costs to the plaintiff in error; and the verdict of the jury is set aside and a new trial is granted; and this case is remanded for a new trial to be had thereon according to the principles of this opinion, and further according to law.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.  CASE REMANDED.