The city filed its answer, in which it set forth the report made to council by the committee on telephones, stating reasons why the use of the streets should not be granted to the company, and further alleged that it is impossible to lay conduits in the streets of Cincinnati without unduly incommoding the public.
After hearing evidence, a decree was entered by the probate court granting the company the right to place conduits or subways in a part of the city, and to erect poles throughout the rest of the city.
Appeal was taken from this decree, and this court finds that such appeal is not authorized by law, and it is therefore dismissed.
The case was also brought before this court on error.
One error complained of is that the probate court had no-power to give the right to the telephone company to lay conduits in the streets of the city.
This court is of the opinion that this ground for error is well taken.
The probate court based the granting of the right to lay conduits in the streets on Section 3461, Revised Statutes. This section (which is made applicable to telephone companies by Section 3471) reads as follows:
“Section 3461. When any lands authorized to be appropriated to the use of a company are subject to the easement of a *351 street, alley, public way or other public use, within the limits of any city or village, the mode of uáe shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they can not agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley or public way, so as not to incommode the public in the use of the same but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley or public way, beyond what may be necessary to restore the pavement to its former state of usefulness.”
The reason why Section 3461 does not give the probate court power to grant the right to lay conduits is this: the statutes do not give the right to a telephone company to lay conduits; and the city can not give it that right, unless the company owns and operates a telephone exchange, as provided in Section 3471-1, which this company does not; and therefore the probate court, in case of a disagreement between the company and the city, can only direct a mode of use such as the two might have agreed upon.
A reading of the statutes will show that the city and the-company are not given the right to agree upon a mode of laying conduits, but only upon a mode of stringing overhead wires;- and the fact that the statutes were passed before conduits were known to science explains the reason why they are not provided for by the statutes.
Remembering that all the statutes speak of telegraph companies, but that they were later made applicable to telephone-companies also by Section 3471, the sections will be examined. Chapter 4 of Title II, Part Second, of the statutes, deals with magnetic telegraph companies. It begins with Section 3454, which defines the methods to be used by a telegraph (or telephone) company in stretching its wires. This Section 3454 originated in the act of May 1, 1852 (50 O. L., 274, Section 47), which reads as follows:
“Section 47. The corporation hereby created, is authorized to construct said telegraph line, or lines, from point to point, *352 along and upon any of the public roads, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; provided that the same shall not incommode the public in the use of said roads or highways.”
Were conduits (or subways, the other word) contemplated in drawing this Section 47 ? Evidently not, because placing wires in subways was first thought of about 1880, and was not put in use until some years later. See Cassier’s Magazine (July, 1901), “The Telephone in the United States,” and 29 Yol. Electrical World, 163. Besides, a conduit can not be constructed “along and upon” a public road, nor can it be “erected.” The section obviously was drawn to apply only to wires strung overhead upon “fixtures, including posts, piers and abutments.”
If the language of the original Section 47 excludes subways, so does that of the present Section 3454, for the language of both is practically the same. Section 3454 reads as follows:
“Section 3454. (Powers of companies). A-magnetic telegraph company heretofore or hereafter created may construct telegraph lines, from point to point, along and upon any public road, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but the same shall not incommode the public in the use of such road.”
This Section 3454 can not be interpreted so as to give the right to a telephone company to lay conduits. The rule for the construction of statutes has been so clearly laid down by our own Supreme Court that there is no occasion to look outside the state. The following are some expressions of that rule:
“We must apply it (the statute) according to its literal meaning.” McCormick v. Alexander, 2 Ohio, 66, 74.
“Whether the law be politic or impolitic, whether its provisions be strictly equitable or otherwise, are considerations which must not operate with the court in determining its effect. It is our duty to declare, not to make the law.” Ludlow v. Johnson, 3 Ohio, 553, 567.
“Where the words of the statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning,” etc. Woodberry v. Berry, 18 Ohio St., 456.
See also, Id., 462, where the court says that “the words ‘other than the county’ must have been omitted from the bill by ac *353 cident or oversight of the draughtsman of the bill or of the clerk who engrossed it, but notwithstanding this, ita lex scripta est!”
The court must then take the language of Section 3454 as it is written, without regard to what one of the learned counsel for the defendant in error calls the “necessities of the case.” It may be that the Legislature ought at once to pass an act giving probate courts the power to permit conduits in the streets of a city; but until the Legislature has conferred this power upon probate courts, such courts have no right to exercise a legislative function because of the necessities of a case. Neither can this court agree with the claim made by the other learned counsel for defendant in error that this is a case where the court, in construing the statute, should broaden its meaning so as to make its language consist with the present state of the art of laying wires. No authority was cited to justify such a mode of interpreting a statute.
Not only do the language and history' of Section 3454 preclude an interpretation of this section that would include conduits, but the subsequent sections point to the same conclusion. The words “erect” and “erection” are used throughout the statutes. Section 3456 provides for appropriating land for the erection of poles, etc.; Section 3457 forbids erecting a pole, etc., on land without the consent of the owner; Section 3458 forbids a company to erect poles, etc., too close to other wires; Section 3459 limits a company to a strip of five feet along railroad lines to erect its poles, etc.; and Section 3461-1 gives the right to erect the necessary fixtures along and upon public roads in almost the identical language used in Section 3454 at the beginning of the chapter. When on June 29, 1879, Section 3471 was passed, giving to telephone companies the same powers, sub-” jeet to the same restrictions as are given in this chapter to telegraph companies, the former became clothed with the power to, erect the necessary fixtures to sustain their wires along and upon the public ways, across any of the waters within the state,; and over private property, after certain proceedings; but tele-1 phone companies did not by this act of June 29, 1879, acquire' the right to lay conduits, first, because the language of all the *354 statutes precludes such a construction, and, second, because even in 1879 subways for underground wires were not yet in use.
There is another good reason why all the foregoing statutes must be construed to refer to overhead wires only. On April 8, 1891, about the time conduits first came into use, Section 3471-1 was passed, entitled “An act to authorize telephone companies to place and maintain their wires under ground when consent is had of cities where the same are situated.”
There was no reason to pass this act if telephone companies already had a way under the statutes to acquire the right to lay conduits. Its passage is another proof that there was no intent in any of the previous acts to give telephone companies this privilege. The rule of construction that applies when a statute like Section 3471-1 is passed is laid down by Minshall, J., in State, ex rel, v. McGregor, 44 Ohio St., 628, 631, in the following language:
“Special circumstances often create a necessity for appropriate special provisions, differing from the general rule upon the same subject; and so, where such provisions are found in a statute, different from the general provisions that would apply to the ease, the courts must assume that the special provisions were made for adequate reasons, and give them effect by construing them as exceptions to the general rule contained in the general provisions of the statute. In this way, without disregarding any of its provisions, effect is given to each and all the provisions of a statute.”
In concluding upon this first point under discussion, there is one more thing to be said. If Section 3461 clothes the probate court with power to grant a telephone company the right to lay conduits, as claimed by the learned counsel for the defendant in error, then it clothes that court with legislative powers. It required the passing of Section 3471-1 by the Legislature to give 'to telephone companies operating and owning an exchange the right to put wires in subways underground. It will require another act of the Legislature to give the same right to telephone companies which do not own or operate an exchange. The function which the probate court is called upon to exercise under this Section 3461 is judicial, not legislative, says the Supreme Court *355 in Zanesville v. Telephone Co., 64 Ohio St., 67. That is, when an issue is presented to it because of a disagreement between the company and the city as to the proper mode of stringing wires overhead, it must decide that issue; but it can not go beyond this judicial function and exercise the function of a Legislature by granting the right to the telephone company to lay conduits.
It should be noted that the Supreme Court in this 64 Ohio St., 67, decided nothing more with reference to Section 3461 than that that section is constitutional. The section was held to be constitutional on the ground that the function to be exercised by the probate court thereunder is judicial, and not legislative. The court did not decide, as some probate courts have apparently thought, that in case a telephone company and a city fail to agree upon a legitimate mode of stringing the wires, the probate court may decide upon any mode, whether authorized by the statute or not.
Turning to the authorities that bear upon this first point under consideration, we find that Keasbey on Electric Wires, 2d Ed. (1900), Section 70, mentions but two — Edison Electric Light Co. v. Cincinnati, 3 Goebel’s Rep., 304; and Commonwealth v. Warwick, 185 Pa. St., 623. In the first of these cases the learned judge took a view of the Ohio statutes contrary to that expressed here by this court, and held that any telephone company may lay wires underground in Ohio; but in the Pennsylvania ease, which is a Supreme Court decision, a full bench decided that “over and through” in a grant does not include permission to lay “under.” If “over and through” do not mean “under,” surely the words “from point to point, along and upon any public road, by the erection,” etc., used in the Ohio statute do not mean under.
In addition to the two eases mentioned by Keasbey, the case of Cleveland Telephone Company v. Chagrin Falls is cited (1 O. L. R., 534, March 28, 1904), where Lawrence, J., of the Cuyahoga1 Common Pleas expresses the opinion that a probate court may grant a telephone company the right to lay wires underground in this state; but the learned judge does not give his reasons for so holding.
*356 The fact that two or three Ohio probate courts have given the right to telephone companies to lay conduits is called to the attention of the court; but as the decisions of these courts are not reported, not much importance ought to be attached to such instances.
The case of The State, ex rel, v. Murphy, 134 Mo., 548, cited in argument by one of the learned counsel for the defendant in error, relates to the question of whether or not the city has power to grant the right to lay-wires underground, but as that question is settled in this state by Section 3471-1 permitting telephone companies operating a telephone exchange to lay wires underground if the city consents, and by implication excluding other telephone companies from the enjoyment of this privilege under any circumstances, the Missouri ease does not seem to this court to cut any figure here.
The next point which will be taken up is whether or not the organization of The Queen City Telephone Company complied with the law sufficiently to justify the probate court in entering a decree in its favor, and, incidentally, whether the legality of its organization was put in issue by the pleadings or not. The latter is not a question of much moment, as the right to amend the answer if it is defective can be granted by this court under Section 5114.
The court is of the opinion that the organization of the defendant in error was not such as would justify a decree in its favor by the probate court under Section 3461, by reason of the fact that in the election of directors by the stockholders, almost all the stock present was disqualified from voting because of the failure on the part of its owners to pay in the ten per cent, installment on their stock as required by Section 3245, Revised Statutes.
The five incorporators of this company are its sole stockholders and make up its board of directors.
The testimony in the record does not disclose clearly when, where or how the stockholders of this company paid in money on their stock, or where the money was put after it was paid in; •and much f encing was indulged in by witnesses who could have *357 told in a few words all about tbe payments if they were really made.
Gates paid the installment of ten per cent, on his stock by giving his check for $49,970 (printed record, p. 42) on a bank where it is not claimed there was money to meet the check. This was the only check received by Beers, the treasurer (p. 78, id.). The installment of ten per cent, on Beers’ stock would amount to $50,000. He paid $1,000 to the secretary of state, and had a right to draw on Wing for the balance (p. 78, id.). Possibly Pabel and Wing each paid in ten dollars as the installment on ■ the one share of stock which each owned, although it is hard to say. For instance, Beers, the treasurer, says Wing paid no part of any subscription to The Queen City Telephone Company (p. 78, id.), and he ought to know. Whatever facts may be deduced, however, from this contradictory and evasive testimony, the results, for the purposes of the argument, are the same, for there was an insufficient amount paid in to justify the election of directors.
According to Section 3245, a majority of the stock is necessary to a choice. This means a majority of the ten per cent, subscribed, for under Section 3244 there can be no election until ten per cent, of the stock is subscribed and a certificate of that fact filed with the secretary of state. Ten per cent of $1,000,-000 in stock is $100,000, and it therefore took more than $50,-000 in stock to elect a director of this company.
The check paid in by Gates would have been a good payment if drawn upon a fund in bank sufficiently large to meet the cheek, for either money or property may be paid in as capital stock (Jones v. Davis, 35 Ohio St., 474, 476), and a good check is property; but giving a check unless the drawer has funds to meet it is not a payment on stock (2 Clark & Marshall on Private Corporations, Section 511).
The five directors were elected, therefore, by votes, a large majority of which had not paid in the ten per cent, installments required by Section 3243.
The question before the court is whether or not such an organization is sufficient to give a corporation standing in court in an appropriation proceeding?
*358 Two preliminary questions must first be decided. Counsel for defendant in error say this is not an appropriation proceeding, and, further, that no issue is raised by the pleadings as to the proper organization of the company.
Is it an appropriation proceeding? Strictly it is not. Proceedings for the appropriation of private property must be brought before a jury in the probate court under Section 6414, et seq.; but under Section 3461 a telephone company may obtain the right to use the streets in a proper way against the objection of the city, and hence the Supreme Court says of this section (Zanesville v. Telephone Co., 64 Ohio State, 67, 80): ‘ ‘ This is practically a provision for an appropriation proceeding against the municipality,” etc. Indeed, Section 3461 itself begins with the words, “When any lands authorized to be appropriated for the use of a company,” etc. It must be conceded that this is not an appropriation proceeding, but it is so akin to that sort'of an action that if a corporation is bound to prove its organization in the one case, it ought to do so in the other.
As against this being an appropriation proceeding, it is argued that the right to use the 'streets already belongs to the corporation by virtue of the statutes, and that there is no right left to appropriate. This argument is not sound. Section 3461 gives to the corporation the right to use the streets only with the consent of the city. The probate court may grant the right against the protest of the city.
The second preliminary question is: Was the legal organization of the company placed in issue by the pleadings? The petition alleged that the company was duly organized, and if the answer did not by its general denial put this point in issue, an amendment ought to be allowed in this court. But it does seem as if the issue was raised by the answer. It is true that in an ordinary case a general denial does not put the legality of corporate organization in issue (Electron Mfg. Co. v. Jones Electric Co., 8 C. C., 311). There are other cases to the same effect, but none of them are appropriation proceedings except the 56 Ind., 88, which is contrary to the Ohio eases. In Ohio it has been decided that a corporation must *359 prove its organization in an appropriation proceeding. These eases will be examined.
If the organization of the company is a part of plaintiff’s ease in an appropriation proceeding, it is pnt in issue by a general denial.
In 2 Lewis on Eminent Domain, 888, the statement is made that “some courts hold that condemnation proceedings constitute an exception to the general rule, and that in such proceedings a de jure incorporation must be proved. In some cases it is held that the incorporation of the company must be shown at some stage of the proceedings, though not denied.” Among the eases cited in support of. this are three eases from Ohio to the following effect:
“In such proceedings for appropriating land and estimating the compensation to be paid the owner, it is incumbent upon the company, in order to show its right to make the appropriation, to give evidence of a certificate and public record of its organization in strict compliance with the requirements of the law.” A. & O. Railroad Co. v. Sullivcmt, 5 Ohio St., 276, 279.
“On the part of the defendant in error, as we understand the argument, it is claimed that, although the special act of February 23, 1860, for the relief of the creditors and stockholders of the Marietta & Cincinnati Railroad Company (57 O. L., 128), and the proceedings thereunder had, should be held inoperative to invest, de jure, this organization with the powers conferred upon that company, yet as it is de facto acting as a corporation and exercising those powers, neither its existence nor its right to exercise the power of eminent domain can be collaterally questioned. While we do not question the correctness of many of the observations made in argument or of the authorities brought to their support, we still think the proposition itself explicitly answered by the judgment of this court in The A. & O. R. R. v. Sullivant, 5 Ohio St., 276.” Atkinson v. M. & C. R. R., 15 Ohio St., 21, 32.
“It is essential to the exercise of the right of eminent domain for the company to prove that it has fully organized by the election of directors and that they are unable to agree with the owner of the property upon the compensation to be paid therefor.” *360 Powers v. Hazelton Co., 32 Ohio St., 429, second syllabus.
“The condemnation of land for the construction of the road comes within the powers to be exercised by the corporation through its directors. It was therefore incumbent upon the company to show, in addition to the fact of its incorporation, that it had brought itself into a condition to exercise its powers for the construction of the road by a full organization in the election of directors.” (Id., 432). This decision is by Day, J.
Besides the above cases, counsel for plaintiff in error cite another Ohio case in addition to some from other states — the case of State, ex rel, v. Insurance Co., 49 Ohio St., 440. The last syllabus reads:
“The making and filing for the purpose of profit of articles of incorporation in the office of the secretary of state do not make an incorporated company; such articles are simply authority to do so. No company exists within the meaning of the statute until the requisite stock has been subscribed and paid in and the directors chosen.”
This was an insurance case, and it is true that the syllabus of the case must be interpreted in the light of the text and restricted accordingly. It is provided in Section 3634 that no insurance company shall be organized unless its “capital” is fully paid up; but as Section 3243, Section 3244 and Section 3245 provide that no corporation shall organize until ten per cent, of its stock is paid up, there is no real difference between the organization of an insurance company and that of any other kind of corporation except as to the amount to be paid in. There is no reason, therefore, why the principle stated in the 49 Ohio St., 440, should not apply to all companies; and from the language of the syllabus and the context, it is apparently not restricted to insurance companies.
These Ohio authorities substantiate the statement made in 2 Lewis on Eminent Domain, 888, supra.
As to three of the Ohio cases cited, supra, to-wit, 5 Ohio St., 279, 15 Ohio St., 33 and 33 Ohio St., 432, the learned counsel for defendant in error seek to avoid their effect by claiming that the organization of a company, which they hold must be proved, does not include the election of its directors, but merely *361 the filing of articles of incorporation under Section 3238 and the certificate that ten per cent, of the stock is subscribed under Section 3244.
In support of this claim counsel point to the words in 5 Ohio St., 276, 280, supra, where it is stated that a corporation in a condemnation case must give “evidence of a certificate and public record of its organization,” and claim that these words can not refer to the election of the officers of the corporation, because there is no “public record” kept of the election of the officers of a corporation. This court does not agree with the reasoning or the conclusion.
“The organizing” of a corporation is the election of officers by the stockholders (Railroad Co. v. Chapman, 38 Ct., 56). All lawyers use the word “organizing” in this sense. A corporation is not “formed,” to take the word used in Section 3248, Revised Statutes, until the directors are elected, and evidently this word formed is used in the Ohio Statutes as a synonym for organized. To obtain a charter and to certify that ten per cent, of the stock is subscribed are only the first steps toward forming a corporation. At such a stage of its existence a corporation can not be said to be organized, and the term is not so used in the reports. When the 5 Ohio St., 276, speaks of the “public record of its organization,” it is not clear just what is meant, but it could mean the minute book of the corporation containing an official account of the election of officers — for this minute book is in the nature of a public record (1 Green-leaf, Section 493), and is the record evidence that the corporation was properly organized (McFarland v. Strattan Ins. Co., 4 Den., 392). However, the language of Judge Day in 33 Ohio St., 429, 432, quoted in full supra — “a full organization in the election of directors” — ought to set at rest the question as to what our Supreme Court means when it speaks of the organization uf a corporation.
Further, in support of the claim that the organization of a corporation does not include the election of its directors, the learned counsel for the defendant in error call attention to the fact that Section 3239 provides that,' on the filing of the articles of incorporation, the subscribers become a body corporate, with *362 “power to sue and be sued, contract and be contracted with, •acquire and convey at pleasure all such real of personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a common seal, the same to alter at pleasure, and to do all needful acts to carry into effect the objects for which it was created.”
If this section means what the learned counsel claims that it does, and which in truth it seems to mean, then a corporation might even condemn land under Section 6420, Revised Statutes, without having any stockholders, without having ten per cent, on the subscribed stock paid in for the protection of creditors, and without having .any officers.
It seems to the court that Section 3239 does not really mean all that it appears to say, and the court agrees with 1 Morawetz on Corporation (2d Ed.), Section 33, where that author, in speaking of this sort of a statute, says:
“The fact that the statute expressly declares that the signers of the certificate and their successors shall be a body corporate can make no difference. The statute does not intend that they shall be a corporation except in name. Mere names do not alter facts, and no amount of legislation can make a reality out of a fiction.”
In fine, as to the preliminary questions, the court is of opinion that this ought to be treated as an appropriation proceeding, that the organization of the corporation is put in issue by the pleadings, and that the word “organization” includes the election of directors.
Coming, then, to the main question, was the organization of this telephone company such as to entitle it to a standing in the probate court under Section 3461? This court thinks not.
The provisions of Section 3243 that ten per cent, must be paid in on stock at the time of subscription, of Section 3244 that the incorporators shall be liable for any deficiency of such payment, and of Section 3245 that no stockholder shall vote at the first election until such payment is made, are all intended to insure the paying in of a fund for the benefit of future creditors of the association (1 Mor. on Corp, [2d Ed.], Section 71; Hessler v. Cleveland Co., 61 Ohio St., 621). It is a well estab *363 lished principle that statutory provisions intended for the benefit of creditors or the general public can not be set aside by a corporation in its organization or management, although those intended merely to regulate the affairs of the corporation for the benefit of the stockholders may be omitted without invalidating the acts of the corporation. The public have the right to object in the first ease although not in the last. 2 Morawetz on Corporations (2d Ed.), Section 672.
It is the opinion of the court, therefore, that in order to bring a proceeding in the probate court under Section 3461, a telephone company must first organize according to law; and that an election of officers by stock on which nothing has been paid is not such an organization.
The cases cited by the learned counsel for the defendant in error where subscribers for stock were not allowed to set up, in actions for unpaid subscriptions, that there were irregularities in the incorporation of the company, are not of value here. The principle that forbids such a defense is probably akin to estoppel. Such cases are Chamberlain v. Railroad Co., 15 Ohio St., 225; Railroad Co. v. Smith, id. 328, 336; Henry v. Railroad Co., 17 Ohio, 187, 191; 53 Md., 1; 44 Mo., 85; 31 Tex., 465; 20 Minn., 535.
The same principle holds in the other cases cited where a corporation sued one not a stockholder on a note, and the defendant set up as a defense a question as to the legality of the organization of the plaintiff. Such are 35 Ohio St., 324; 8 C. C., 311; 12 R. I., 491, etc., cited by defendant in error. In Raymond v. Railroad Co., 21 W. L. B., 103, decided by Judge Peck in the superior court, it is held that the election of directors where illegal votes were cast, can not be questioned by a creditor of the corporation. None of these are suits to appropriate property.
It is argued by the learned counsel for defendant in error that the organization of the corporation can not be attacked collaterally, and can only be called in question in a direct proceeding. This is true; but in a condemnation case to question the existence of a corporation is not to make a collateral attack upon it.. Under Section 6414, et seq., for the appropriation f *364 property in the probate court, proof of the “existence of the corporation” is required by Section 6420 from the plaintiff. Its legality is directly in issue. If proceedings under Section 3461 ■are in the nature of appropriation proceedings, the plaintiff should prove its organization as part of its case, and any question as to its organization raised by the city would not be a collateral attack.
One more point made on this branch of the case by the learned counsel for the defendant in error will be taken up.
It is claimed that Section 3245 denying the right of voting to stock which owes an installment, does not apply to the first election. of directors. It is said that this must be so because at the time of the first election, there being no officers, no one is authorized to receive the ten per cent, installment on stock. This position is not tenable.
Section 3245 uses the words “at such first election.” Further it provides that the incorporators shall be the inspectors of this election while the inspectors of subsequent elections are provided for by Section 3245a (2). This Section 3245 applied throughout to the first election only until April 23, 1898 (93 O. L., 230), when a clause was inserted in the middle giving the right to cumulate votes at the first and all other elections.
Evidently one of the incorporators, to be designated by the others, should receive the checks (made payable to the company); for under Section 3244 (last line), the incorporators are liable for the amount of any deficiency in the actual payment of the ten per cent. It is held in Hessler v. Cleveland Co., 61 Ohio St., 621, cited supra, that the incorporators are liable under Section 3244 for any deficiency in the actual payment of ten per cent, of the authorized capital stock, and that this liability is a security for the creditors in addition to the liability of the stockholders. In order that the, incorporators may protect themselves against such liability, they have the right as tellers of the first election, to refuse to let anyone vote (under Section 3245) until he has paid the ten per cent, installment on his stock; and how can the incorporators know that a stockholder has paid his installment unless the check is in their possession? When the statute requires the incorpor *365 ators to certify to the secretary of state that ten per cent, is paid in, makes them personally responsible for any part of it that is not paid in, and commands that they shall let no one vote who has not paid, they can be true to their trust and protect themselves only by getting the money into their own possession. The court is of the opinion that this is the meaning of the statute.
Charles J. Hunt, Corporation Counsel, for plaintiff in error.
Peck, Shaffer & Peek, ¡John W. Warrington and Miller Outcalt, for the Cincinnati & Suburban Bell Telephone Co.
C. B. Matthews, for defendant in error.
Powel Crosley, for the Cincinnati Telephone Co.
Pogue & Pogue, for Fitzsimmons Telephone Co.
Theodore Horstman, for Interstate Telephone Co.
No opinion is expressed on points not passed upon in this decision. Judgment reversed.